UNITED STATES of America, Appellee,

v.

Dale F. HUDSON, Appellant.

No. 82–2529.

United States Court of Appeals,
Eighth Circuit.

Submitted June 17, 1983.

Decided Sept. 28, 1983.

Rehearing Denied Oct. 27, 1983.

(2) knowingly and intentionally possessing in excess of one thousand pounds of marijuana with intent to distribute it. He was sentenced to a five-year prison term for each count, to be served concurrently. He appeals, arguing that he was entitled to a judgment of acquittal at the close of the prosecution's opening statement and at the close of the prosecution's case. He also contends that the district court[1] erred in giving the jury an aiding and abetting instruction and an exculpatory statement instruction, and in refusing to give the jury a lesser included offense instruction. We affirm the judgment of conviction.

A special agent of the Drug Enforcement Administration (DEA) flying over Ste. Genevieve County, Missouri, spotted three fields of marijuana and obtained a search warrant. A group of officers and a special agent of DEA went to the area and found three marijuana fields arranged in a horseshoe shape with a pond in the center. They heard the sound of a motorcycle and concealed themselves. The motorcyclist, who was Hudson's twelve year old son, drove near the field, stopped, and scanned the fields. He left, returned a few minutes later and scanned the fields again. About a half hour later, Hudson drove to a small shed near the marijuana fields and unloaded some roofing material. According to government witnesses, Hudson walked into the fields, scanned the area for one to two minutes, then entered the center marijuana field. He examined the buds of a marijuana plant, bent the plant over, took leaves off the plant and threw them on the ground. He opened other plants, inspected them and removed their dying leaves. He moved through the center field, into the left leg of the horseshoe-shaped field, and finally moved into the right leg of the horseshoe-shaped field.

Thomas E. Dittmeier, U.S. Atty., Edward L. Dowd, Jr., Asst. U.S. Atty., St. Louis, Mo., for appellee.

Shaw, Howlett & Schwartz by Charles M. Shaw, Clayton, Mo., for appellant.

Before BRIGHT, JOHN R. GIBSON, and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Dale F. Hudson was convicted under 21 U.S.C. § 841(a)(1) (1976) of (1) knowingly and intentionally manufacturing in excess of one thousand pounds of marijuana, and

Deputy Sheriff Claussen approached the defendant and called out, "Freeze, Sheriff's Department, you're under arrest." Defendant stated, "No problem, you've got me."

1. The Honorable Clyde S. Cahill, Jr., United States District Judge for the Eastern District of    Missouri.

Hudson also yelled to his son, "Get the truck, run for it." After his rights were read to him by Deputy Sheriff Claussen, Hudson said, "I only went down to the marijuana fields to see what my dogs had treed." The officers testified that Hudson had been in the marijuana fields for seven to fifteen minutes before they heard any of the dogs bark.

Hudson claimed at trial that the dogs started barking before he went into the field. He denied touching any of the marijuana plants. He further denied being told that he was placed under arrest by a person from the Sheriff's Department, making the statement, "No problem, you've got me," or yelling to his son. He testified that he told Deputy Sheriff Claussen that "I went down to see what my dogs had treed," without mentioning "marijuana fields." He denied knowing that the plants were marijuana. He also testified, however, that he told Deputy Sheriff Claussen, "If this is your marijuana field, just let me walk out of it and I will forget I ever seen it."

The shed near the field contained empty fertilizer bags, tools and a bucket of green vegetable matter identified by one of the detectives as marijuana. Hudson claimed that the shed was a deer blind. He denied that there was any marijuana in it or that he had anything to do with the marijuana. Hudson testified that he had permission to erect a shed and to use the property, which belonged to his brother-in-law.

After Hudson was arrested, the marijuana plants were cut down, counted and weighed. A government witness testified that the marijuana was of the Sinsemilla variety, which he described as a "female plant that all the male plants have been removed to increase the potency or the THC content of the marijuana plant to gain a higher value on the street." The witness also testified that there were over 2,000 plants, that the marijuana weighed 2,070 pounds, and that it would yield well over a thousand pounds of product to sell. The witness stated that the market value of Sinsemilla marijuana is $1,750 a pound, thus the total amount seized would have been worth at least $1,750,000.

I.

Hudson contends that the evidence adduced at trial was insufficient to support the jury's verdict. In evaluating the sufficiency of the evidence, we view the evidence in the light most favorable to the government and give the government the benefit of all inferences that may reasonably be drawn from the evidence. It is for the jury, not a reviewing court, to evaluate the credibility of witnesses and to weigh their testimony. *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974); *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Sullivan,* 618 F.2d 1290, 1295 (8th Cir.1980). A conviction may be based on circumstantial as well as direct evidence. *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954). Willfulness, intent and guilty knowledge may also be proven by circumstantial evidence and frequently cannot be proven in any other way. *Sullivan, supra,* 618 F.2d at 1295; *United States v. Wisdom,* 534 F.2d 1306, 1309 (8th Cir.1976).

A jury could reasonably infer from ample evidence that the defendant was using the shed for storage of equipment for cultivating the 2,000 marijuana plants growing in the nearby fields. Testimony indicated that defendant carefully inspected the plants and that he had use and control of the land and the shed. The quality and quantity of the marijuana further indicated intentional cultivation. Testimony concerning Hudson's own statements, *e.g.,* telling his son to "run for it," also implied his consciousness of guilt. We are satisfied that the evidence was sufficient to support the jury's finding of guilt in this case.

Hudson further argues that the prosecution's opening statement did not set forth a prima facie case. We reject his arguments. *See Chatman v. United States,* 557 F.2d 147, 149 (8th Cir.), *cert. denied,* 434 U.S. 863, 98 S.Ct. 195, 54 L.Ed.2d 138 (1977). "A judgment of acquittal should be granted

**1214**

after the government's opening only when the statement 'clearly and affirmatively' shows 'that the charge against the defendant cannot be sustained under any view of the evidence consistent with the statement.'" *United States v. Oliver,* 570 F.2d 397, 400 (1st Cir.1978) (quoting *McGuire v. United States,* 152 F.2d 577, 580 (8th Cir. 1945)). Hudson argues that the prosecution's opening statement did not outline evidence that would prove the defendant possessed, grew or cultivated marijuana. Although the prosecutor did not refer to the items seized from the shed or to the value of the marijuana, he did summarize the evidence concerning defendant's actions in inspecting the plants and defendant's statements indicating his consciousness of guilt. Thus, the prosecution's opening statement did not "clearly and affirmatively" show that charges could not have been sustained against Hudson. The trial court did not abuse its discretion in refusing to grant a judgment of acquittal following the prosecution's opening statement. *See Oliver, supra,* 570 F.2d at 400; *United States v. Capocci,* 433 F.2d 155, 158 (1st Cir.1970).

**II.**

■ Hudson argues that the district court erred in giving Jury Instructions Nos. 16 and 17, which related to aiding and abetting,[2] because no evidence indicated that others were involved in the criminal enterprise. We disagree. The jury could reasonably have inferred from evidence as to the arrangement, quality, and quantity of the marijuana plants that more than one person was involved in the intentional cultivation of the marijuana. Hudson testified that the marijuana appeared to have been planted. He also testified that he had not planted anything that year, not even a garden, due to illness. He stated that his brother-in-law owned the land on which the marijuana was growing. The district court correctly held that the jury could have concluded that Hudson was guilty of the crimes charged even though he alone did not perpetrate them. The evidence was sufficient to sustain the giving of aiding and abetting instructions.

■ Hudson contends that the government never demonstrated who, aside from his brother-in-law or his son, might have participated in the crime with the defendant. Identification or conviction of the principal is not necessary to sustain a conviction of an aider and abetter for the principal crime charged. The government need only show that an offense was committed by a principal and that the defendant aided and abetted the principal. *Ray v. United States,* 588 F.2d 601, 603–04 (8th Cir.1978); *United States v. Frye,* 548 F.2d 765, 768 (8th Cir.1977); *Pigman v. United States,* 407 F.2d 237, 239 (8th Cir.1969). Hudson also disputes the trial court's conclusion that one person alone could not have committed the crime. He argues that the crime could have been committed by one person other than himself. The evidence, however, sufficiently implicates Hudson in the cultivation of the marijuana plants and suggests that others were involved as well.

**2.** Jury Instruction No. 16, which incorporates the text of 18 U.S.C. § 2 (1976), reads:
The guilt of a defendant may be established without proof that the accused personally did every act constituting the offense charged.
"Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission is punishable as a principal.
"Whoever willfully causes an act to be done, which if directly performed by him or another would be an offense against the United States, is punishable as a principal."
In other words, every person who willfully participates in the commission of a crime may be found to be guilty of that offense.

Jury Instruction No. 17 states:
In order to aid and abet another to commit a crime it is necessary that the accused willfully associate himself in some way with the criminal venture, and willfully participate in it as he would in something he wishes to bring about; that is to say, that he willfully sought by some act or commission of his to make the criminal venture succeed.
You, of course, may not find any defendant guilty unless you find beyond reasonable doubt that every element of the offenses as defined in these instructions was committed by some person or persons, and that the defendant participated in its commission.

In support of his argument, defendant cites three cases in which courts have held an aiding and abetting instruction to be improper: *United States v. Barker,* 542 F.2d 479 (8th Cir.1976) (illegality of the effort that the defendant was aiding not shown); *United States v. Pearlstein,* 576 F.2d 531 (3d Cir.1978) (no evidence to show defendants' knowledge of the illegality of their activities); and *United States v. Barber,* 429 F.2d 1394, 1397 (3d Cir.1970) ("mere presence at the scene of a crime, even in the company of one or more principal wrongdoers, does not alone make one an aider or abetter"). These cases are readily distinguishable because the jury could infer from the evidence, particularly concerning defendant's actions and statements in the marijuana fields, that cultivating marijuana was illegal, that Hudson knew it to be illegal, and that he was no innocent bystander.

■ Hudson also argues that the district court erred in giving the jury an instruction concerning false exculpatory statements. False exculpatory statements are properly admissible as substantive evidence tending to show guilt. *United States v. Bear Killer,* 534 F.2d 1253, 1260 (8th Cir.), *cert. denied,* 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed.2d 118 (1976); *United States v. Merrill,* 484 F.2d 168, 170 (8th Cir.), *cert. denied,* 414 U.S. 1077, 94 S.Ct. 594, 38 L.Ed.2d 484 (1973); *Rizzo v. United States,* 304 F.2d 810, 830 (8th Cir.), *cert. denied,* 371 U.S. 890, 83 S.Ct. 188, 9 L.Ed.2d 123 (1962). Hudson contends that his statement, "I only went down to the marijuana fields to see what my dogs had treed," was neither false nor exculpatory. Government witnesses testified, however, that the dogs did not begin to bark until after the defendant had been in the marijuana fields for seven to fifteen minutes. This conflict in evidence over the nature of Hudson's statement justified submission of an instruction to the jury to determine whether Hudson made an exculpatory statement and whether it was false.

■ In support of his contention that the false exculpatory statement instruction was improper, Hudson cites *United States v. Grunberger,* 431 F.2d 1062, 1069 (2d Cir. 1970), where the district court instructed the jury "that the undisputed evidence that the defendant spoke these words constituted an admission of guilt by him." In contrast, the court in Hudson's case instructed the jury that "[w]hether or not evidence as to a defendant's voluntary explanation or statement points to a consciousness of guilt, and the significance to be attached to any such evidence, are matters exclusively within the province of the jury." Jury Instruction No. 25. Since the instruction had an evidentiary basis and was given in terms that permitted the jury to attach as much or as little significance to the statement as it chose, we conclude that the instruction was proper.

## III.

■ Hudson contends that the trial court erred in refusing to instruct the jury that it could find the defendant guilty of the lesser included charges of manufacturing and of possessing with intent to distribute less than 1,000 pounds of marijuana. We uphold the district court's refusal to give that jury instruction. A defendant is only entitled to an instruction on a lesser included offense if, *inter alia,* there is some evidence that would justify conviction of the lesser offense. *United States v. Thompson,* 492 F.2d 359, 362 (8th Cir.1974). If the evidence does not provide a rational basis for a jury to find the elements necessary to support the lesser included offense instruction, the trial court may properly exclude such an instruction. *United States v. Neiss,* 684 F.2d 570, 571 (8th Cir.1982); *United States v. Elk,* 658 F.2d 644, 648 (8th Cir.1981).

■ No evidence in Hudson's case could provide a jury with a rational basis for concluding that the marijuana weighed less than 1,000 pounds. The weight of the marijuana was never in dispute during the trial. The only testimony concerning the weight of the marijuana indicated that it weighed 2,070 pounds and would produce more than 1,000 pounds of product. Defense counsel did not cross-examine any witnesses con-

cerning the weight of the marijuana and did not mention in his opening statement or later offer any evidence to show that the weight was less than 1,000 pounds. The district court found that there was no evidence to raise any question as to the amount of marijuana and correctly refused to give the lesser included offense instruction.

We have carefully examined the remainder of defendant's arguments and conclude that they are without merit. Accordingly, we affirm the judgment of conviction.