**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5709-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TRAVIS L. PLUMMER,
a/k/a TRAVIS LAMONT
PLUMMER, TRAP TRAVIS
PLUMMER, and TRAVIS
LAMOUNT PLUMMER,

     Defendant-Appellant.

_____

Submitted June 7, 2021 – Decided July 1, 2021

Before Judges Rothstadt and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 18-09-0832.

Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Adam D. Klein, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant, Travis L. Plummer, appeals from the Law Division's July 1, 2019 judgment of conviction entered after a jury convicted him of second-degree disturbing, moving, or concealing human remains, N.J.S.A. 2C:22-1(a). On appeal, defendant argues the following three points:

POINT I

THE MISTAKEN DENIAL OF THE REQUEST FOR A LESSER-INCLUDED OFFENSE DEPRIVED DEFENDANT OF A FAIR TRIAL.

POINT II

THE TRIAL COURT'S INADEQUATE RESPONSE TO A JURY QUESTION LEFT THE JURY WITHOUT PROPER GUIDANCE ON A CENTRAL QUESTION IN THE CASE, THEREBY DENYING DEFENDANT DUE PROCESS AND A FAIR TRIAL. (NOT RAISED BELOW).

POINT III

IF THE CONVICTION IS NOT REVERSED, THE MATTER MUST BE REMANDED FOR RESENTENCING BECAUSE THE SENTENCING COURT ERRONEOUSLY BELIEVED THAT IT HAD TO SENTENCE DEFENDANT IN THE EXTENDED-TERM RANGE AFTER DETERMINING THAT HE MET THE STATUTORY CRITERIA FOR A PERSISTENT OFFENDER EXTENDED TERM.

We are not persuaded by defendant's contentions. We affirm because we conclude the trial judge properly rejected defendant's request for a charge about a lesser offense as the evidence was insufficient to support defendant's acquittal on the charged offense, the judge adequately and appropriately responded to the jury's questions, and he correctly exercised his discretion by imposing a discretionary sentence in the extended term.

I.

Defendant's conviction was based upon evidence adduced at trial that included his admissions in his statement to police after he was arrested. That evidence established the following pertinent facts.

Defendant's infant daughter died of undetermined causes at some point in the summer of 2017 in Richmond, Virginia. At that time, defendant secreted her corpse in blankets, which he eventually placed in a trash bag before inserting her body into duffle bags that he then placed into a pink suitcase before placing that suitcase into a black suitcase. Prior to closing the entire package within the black suitcase, recognizing that it would start to smell "sooner or later," defendant applied chemical carpet cleaner to the package to mask the inevitable smell of decomposition. In November 2017, defendant traveled with the black

3

suitcase from Richmond on a bus to Jersey City where he visited with his girlfriend.

As part of their investigation into the welfare and location of defendant's daughter, the Richmond police posted a Facebook notice about their search for the child and defendant that prompted a response from the Jersey City Police Department, which ultimately dispatched officers to defendant's girlfriend's home to look for the child and defendant. Defendant, who was present at the home when officers arrived, was able to leave the home without the officers detecting him.

As a result of the police investigation, defendant decided that he was going to leave New Jersey. Defendant and his girlfriend, who was not aware of the contents of the black suitcase, took a bus to another part of town where defendant disposed of the suitcase by tossing it from the top of an overpass into a trash-strewn, fenced-in area below. He then returned to his girlfriend's house for a few weeks before taking a bus to Miami, Florida on April 1, 2018, and then a plane to San Juan, Puerto Rico.

On April 11, 2018, a contractor working for the Port Authority of New York and New Jersey (PANYNJ) discovered the suitcase and notified a PANYNJ employee, who contacted the police. The police's investigation

4

confirmed that the suitcase had defendant's DNA on its handles, which, along with information provided by defendant's girlfriend, led to the discovery of his location in Puerto Rico where he was arrested on April 19, 2018.

In defendant's ensuing statement to police, he admitted to packaging his daughter's remains and placing them in the suitcases. He stated that he carried her remains with him from place to place because he "just couldn't let her go. And the only reason [he] let her go at the end was because [he hurt his] leg. [He] couldn't drag . . . just couldn't move it." Also, while discussing defendant's decision to leave the suitcase, he told the police that it was his intention to return to New Jersey to retrieve the black suitcase and give his daughter a proper burial.

In his statement, defendant also denied having any knowledge about how his daughter died. He only stated that she had passed away in Virginia at "the end of the summer" while they were both "in the car," and he "figured the autopsy would bring [the cause of her death] to light, because [he] want[ed] to know too, but . . . dealing with the system" was a problem.

On September 19, 2018, a Hudson County grand jury returned an indictment, charging defendant with one count of second-degree disturbing, moving, or concealing human remains. Judge Patrick J. Arre presided over

defendant's trial that began on April 2, 2019. On April 9, 2019, the jury returned a guilty verdict on defendant's lone charge.

At defendant's sentencing on June 21, 2019, Judge Arre granted the State's motion to sentence defendant in the extended-term under N.J.S.A. 2C:44-3(a) and he imposed a twenty-year term of imprisonment, subject to ten years of parole ineligibility. This appeal followed.

## II.

We begin our review by addressing defendant's argument that he was entitled to a jury charge as to the lesser offense of third-degree "purposely or knowingly fail[ing] to dispose of human remains in a manner required by law," N.J.S.A. 2C:22-1(b). We disagree.

At trial, after the parties rested, defendant requested that the judge instruct the jury on N.J.S.A. 2C:22-1(b) as a lesser-included offense of the charged crime. That statute states that a "person commits an act of the third-degree if he purposely or knowingly fails to dispose of human remains in a manner required by law." N.J.S.A. 2C:22-1(b). He argued that it was "within the province of the jury to" decide whether to convict defendant of the second-degree or the third-degree crime because there was a rational basis for the instruction.

6

Judge Arre considered the parties' arguments and denied defendant's request. In his April 8, 2019 oral decision, the judge reviewed N.J.S.A. 2C:1-8(e), stating, "The [c]ourt shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." He then stated that he "interpreted the statute as requiring satisfaction of a two-part test." Under the first prong of the test, "to charge a jury on an unindicted offense, the [c]ourt must conclude . . . that the offense is included in the charged offense." Under the second prong, "the [c]ourt must conclude . . . that the evidence at trial presents a rational basis for the jury to acquit the defendant of the greater offense and convict him . . . of the lesser offense."

Judge Arre concluded that defendant had failed to present "a rational basis for the jury to acquit [him] of the greater offense and convict him of a lesser offense." Citing State v. Brent, 137 N.J. 107, 114 (1994), the judge noted that "[t]he submission of an included offense is justified only where there is some basis in the evidence for finding the defendant innocent of the crime charged, and yet guilty of the included crime." The judge concluded,

> defendant has provided no basis for finding defendant innocent of the charged crime and yet guilty of the included crime. Therefore, by . . . defendant's own admissions and other corroborating testimony, the only

rational basis to convict the defendant is on the concealment . . . charge, and not on the lesser included offense of purposeful or knowingly failing to dispose of human remains in a manner required by law.

On appeal, defendant argues that Judge Arre improperly denied his request to charge the jury with the lesser offense by erroneously concluding that there was no rational basis to acquit on the greater offense. We find no merit to this contention.

"[A]ppropriate and proper jury charges," including instructions on lesser-included offenses, "are essential to a fair trial." State v. Savage, 172 N.J. 374, 387 (2002); see also State v. Gonzalez, 444 N.J. Super. 62, 70 (App. Div. 2016) (explaining that jury instructions "play a critical role in criminal prosecutions"). "The failure to instruct the jury on a lesser included offense that a defendant has requested and for which the evidence provides a rational basis warrants reversal of a defendant's conviction." State v. Dunbrack, 245 N.J. 531, 545 (2021) (quoting Savage, 172 N.J. at 397-98). Here, we conclude Judge Arre correctly determined that the requested charge should not have been given to the jury substantially for the reasons he expressed in his thoughtful oral response to defendant's request. We add the following comments.

Whether a trial court must charge the jury on a lesser-included offense is governed by N.J.S.A. 2C:1-8(e), which provides that "[t]he court shall not

8

charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." There must also be a rational basis for the jury to have acquitted defendant of the charged offense. Dunbrack, 245 N.J. at 545; see also State v. Alexander, 233 N.J. 132, 142 (2018) ("whether the lesser offense is strictly 'included' in the greater offense . . . is less important . . . than whether the evidence presents a rational basis on which the jury could acquit the defendant of the greater charge and convict the defendant of the lesser." (quoting State v. Cassady, 198 N.J. 165, 178 (2009))). "[T]he facts adduced at trial [must] clearly indicate that a jury could convict on the lesser while acquitting on the greater offense." State v. Jenkins, 178 N.J. 347, 361 (2004); see also Cassady, 198 N.J. at 177-78; Brent, 137 N.J. at 117.

"When a defendant requests a charge to a lesser included offense, 'the trial court [must] examine the record thoroughly to determine if there is a rational basis in the evidence for finding that the defendant was not guilty of the higher offense charged but that the defendant was guilty of a lesser-included offense.'" Dunbrack, 245 N.J. at 545 (quoting State v. Sloane, 111 N.J. 293, 299 (1988)). Meeting the rational basis test is a "low threshold," and in considering whether

the threshold has been met, "the trial court must view the evidence in the light most favorable to the defendant." State v. Carrero, 229 N.J. 118, 128 (2017).

"Whether an offense is an included offense of another charge requires a comparison of the statutory elements of each charge." State v. Thomas, 187 N.J. 119, 129 (2006). Here, defendant was charged under N.J.S.A. 2C:22-1, which identifies the second-degree and the third-degree offenses:

> a. A person commits a crime of the second degree if he:
>
> (1) Unlawfully disturbs, moves or conceals human remains;
>
> (2) Unlawfully desecrates, damages or destroys human remains; or
>
> (3) Commits an act of sexual penetration or sexual contact, as defined in [N.J.S.A.] 2C:14-1, upon human remains.
>
> b. A person commits a crime of the third degree if he purposely or knowingly fails to dispose of human remains in a manner required by law.

Applying the offenses' elements to this case, defendant was charged under subsection (a)(1) because he had concealed his daughter's corpse. Concealment is not an element of the third-degree offense under subsection (b).

While subsection (b) is a lesser-included offense as defined by N.J.S.A. 2C:1-8(d), and assuming that the evidence supported a conviction for the lesser-

included offense,[1] that evidence did not provide a rational basis for the jury to have acquitted him of the charged offense. The evidence established that defendant not only failed to properly dispose of the child's remains, but he purposefully and admittedly concealed them. As Judge Arre found, there was no rational basis to acquit defendant of the charged offense. See Cassady, 198 N.J. at 178.

If the evidence in this case were limited to the manner in which defendant "disposed" of his daughter's remains, there would arguably have been a rational basis for a conviction on the lesser-included offense. But the evidence was not so limited. The evidence, including defendant's own admissions, demonstrated that he concealed her remains in the suitcase for months before disposing of them by throwing the suitcase from an overpass after it became clear that investigators were narrowing in on his location. Therefore, there was no rational basis to acquit him on the greater offense, and his request that the lesser-included offense be charged was properly denied.

---

[1] We reject defendant's contention that because he maintained an intent to return to properly dispose of his daughter's remains, he could be convicted of the lesser-included offense of "fail[ing] to dispose of human remains in a manner required by law."

## III.

We turn to defendant's argument on appeal that Judge Arre's allegedly "inadequate" response to a jury question was an error "clearly capable of producing an unjust result," such that his conviction must be reversed. Again, we disagree.

During jury deliberations, Judge Arre received a note with a question from the jury, asking, "Can you define disturbing human remains?" Upon receiving this question, outside of the presence of the jury, Judge Arre proposed to counsel that he reread the charge he had already given for disturbing or desecrating human remains and asked counsel if they had any other suggestions. Neither the prosecutor nor defendant's counsel objected, and both responded that they had no alternative suggestions.

When a defendant fails to object to a judge's response to a jury question during deliberations, we review for plain error, and "disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). Plain error, in the context of a jury charge, is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that

12

of itself the error possessed a clear capacity to bring about an unjust result." State v. Camacho, 218 N.J. 533, 554 (2014) (alteration in original) (quoting State v. Adams, 194 N.J. 186, 207 (2008)). A defendant's failure to object to jury instructions or to the absence of a particular instruction not only "gives rise to a presumption that he did not view its absence as prejudicial to his . . . case," State v. McGraw, 129 N.J. 68, 80 (1992), but is also "considered a waiver to object to the instruction[s] on appeal." State v. Maloney, 216 N.J. 91, 104 (2013).

Applying this standard, we discern no plain error in Judge Arre's decision to reread his instruction to the jury. In response to the jury question, the judge reread his earlier instruction and there was no further inquiry or request for clarification by the jury. See State v. McClain, 248 N.J. Super. 409, 421 (App. Div. 1991) (affirming a defendant's conviction where the judge reinstructed the jury with his original charge with the parties' consent and the jury did not ask for further clarification). Here, there was simply no evidence that, as defendant argues, the jury remained confused about the application of "disturbing" remains, leaving his contention about juror confusion to "rest[] on sheer

speculation." Ibid. In any event, according to its verdict sheet,[2] the jury's conviction was not based on a finding that defendant disturbed his child's remains, but upon his concealment of them. Under these circumstances, even if the judge's response was erroneous, and it was not, there was no showing that the error led to an unjust result.

IV.

Finally, we address defendant's challenge to his sentence in the extended term. To be clear, defendant does not challenge Judge Arre's finding that defendant was extended-term eligible. Rather, he argues that the judge mistakenly believed that he did not have discretion to sentence within the ordinary term. We disagree, as there is nothing in the record to support defendant's contention.

At sentencing, Judge Arre detailed the process whereby a defendant may be sentenced to an extended term, stating that in the ordinary term,

---

[2] The verdict sheet first prompted jurors to indicate whether they found defendant guilty of disturbing, moving, or concealing human remains. The sheet then indicates that if they had found defendant guilty, "[t]he jury must be unanimous as to at least one of the following" and provided a space for jurors to check next to "(1) that there was an unlawful disturbing," "(2) that there was an unlawful moving," or "(3) that there was an unlawful concealment." The jurors checked next to "(3) that there was an unlawful concealment," but left the remaining spaces blank.

14

"imprisonment for a second-degree conviction shall be fixed . . . between five and ten years." He continued, "It is within the [c]ourt's discretion to sentence the defendant within [those] limits." He also explained, citing State v. Dunbar, 108 N.J. 80, 87-88 (1987), that he had the statutory authority to impose a sentence that exceeds the ordinary sentencing range on application by the prosecutor under N.J.S.A. 2C:44-3(a), if he found that defendant was a persistent offender.

Noting that the State had made the necessary application under N.J.S.A. 2C:44-3(a), Judge Arre found defendant to qualify as a persistent offender. He explained that to find defendant to be a persistent offender, he must find both that defendant was at least twenty-one years old and that he had "previous convictions for at least two separate crimes on separate occasions as an adult when those crimes or release from confinement fall within ten years of the current crime" pursuant to N.J.S.A. 2C:44-3(a). The judge found those requirements to be met because defendant had been born in 1980 and had pled guilty to several indictable offenses in the decade leading up to the present offense. Accordingly, the judge found defendant to be a persistent offender pursuant to N.J.S.A. 2C:44-3.

A-5709-18

Having found that defendant qualified under the statute as a persistent offender, the judge stated, "He shall now be sentenced to a term, which shall be fixed by the [c]ourt between [ten] and [twenty] years."

Judge Arre then considered the aggravating and mitigating sentencing factors under N.J.S.A. 2C:44-1 and found applicable aggravating factor one, N.J.S.A. 2C:44-1(a)(1) (the "nature and circumstances of the offense, and the role of the [defendant] in committing the offense, including whether or not it was committed in an especially heinous, cruel, or depraved manner"); aggravating factor three, N.J.S.A. 2C:44-1(a)(3) ("[t]he risk that the defendant will commit another offense"), which the judge gave "considerable weight"; aggravating factor six, N.J.S.A. 2C:44-1(a)(6) ("[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which the defendant has been convicted"), which he also gave "considerable weight"; and, aggravating factor nine, N.J.S.A. 2C:44-1(a)(9) (the "need for deterring the defendant and others from violating the law"). In doing so, the judge placed on the record his findings supporting each factor. The judge then found no mitigating factors applied and proceeded to sentence defendant to the maximum sentence permitted under the extended term range: twenty years imprisonment with ten years of parole ineligibility.

According to defendant, his sentence must be vacated and remanded for resentencing because Judge Arre, after finding that defendant was a persistent offender, erroneously believed he was required to sentence him within the extended-term range. Defendant specifically takes issue with Judge Arre's statement that defendant "shall now be sentenced to a term, which shall be fixed . . . between" ten and twenty years. Defendant insists this statement indicated that the judge believed the statute required him to impose a sentence within the extended term range, whereas, defendant contends, the judge had the discretion to consider a sentence anywhere from the bottom of the ordinary term for the second-degree offense to the top of the extended-term range. Accordingly, he argues that if Judge Arre "[h]ad . . . recognized that a five-year sentence was a lawful disposition, perhaps [he] would not have imposed the extreme sentence here."

We review a judge's sentencing decision under an abuse of discretion standard. State v. Fuentes, 217 N.J. 57, 70 (2014). Under that standard, we will not disturb a sentence unless the trial judge failed to follow the sentencing guidelines, the judge's findings regarding the aggravating and mitigating factors are not supported by "competent and credible evidence in the record," or the judge's "application of the guidelines" renders the sentence "clearly

unreasonable so as to shock the judicial conscience." Ibid. (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

Applying our deferential standard of review, we conclude Judge Arre did not abuse his discretion by sentencing defendant in the extended term. Contrary to defendant's assertions, there is nothing in the record to lead us to conclude the judge did not understand the range of sentences he had the discretion to impose. We conclude defendant's contentions to the contrary are without merit. Suffice it to say, as already noted, the judge expressly recognized that he had discretion to sentence defendant beginning in the ordinary term and extending to the maximum sentence in the extended term.

Moreover, despite defendant's arguments to the contrary, the length of the sentence was not "so severe it was as though the court was sentencing defendant for a homicide, which the State neither charged nor proved." Defendant's sentence was within the range of permissible sentences for the crime for which he was convicted and was based upon specific findings made by Judge Arre. Similarly, we reject defendant's argument that Judge Arre's sentence inappropriately considered a need to protect the public in ultimately sentencing defendant within the extended-term range in contravention of State v. Pierce, 188 N.J. 155, 166-69 (2006) (quoting Dunbar, 108 N.J. at 91) (stating that such

a finding cannot be utilized in order to determine whether a defendant is subject to an extended-term sentence because a judicial finding of a "'necessity to protect the public' . . . calls for a finding beyond the pure fact of the prior conviction" and involves the "exercise of judicial discretion," counter to the Supreme Court's requirement under Blakely v. Washington, 542 U.S. 296 (2004) "that a jury determine all facts that render a defendant eligible for a term that exceeds the maximum applicable to the offense"). There is nothing in the record to support a finding that the judge inappropriately considered the need to protect the public in determining defendant was extended-term eligible, to the extent the judge factored such a finding into defendant's sentence at all.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19